**IN THE COURT OF APPEALS OF IOWA**

No. 14-0752
Filed July 30, 2014

**IN THE INTEREST OF H.R.,**
**Minor Child,**

**B.R., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Constance C. Cohen, Associate Juvenile Judge.

The mother appeals from the termination of her parental rights. **AFFIRMED.**

William E. Sales III of Sales Law Firm, P.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Stephanie Brown, Assistant County Attorney, for appellee State.

Karl Wolle of the State Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

A mother appeals from the juvenile court's order terminating her parental rights to her three-year-old child, H.R. We affirm.

### I. *Background Facts and Proceedings.*

H.R., born in 2011, first came to the attention of the Iowa Department of Human Services (DHS) in February 2013 due to concerns for the mother's mental health and allegations that the mother was using marijuana while caring for her child. At a pretrial conference in April 2013, the mother was exhibiting suicidal behavior, and she was subsequently hospitalized to address her mental health issues. An order of temporary removal was issued, and the child was placed with the child's daycare provider. In May 2013, the child was adjudicated as a child in need of assistance. The child was later placed in his maternal grandmother's care under DHS supervision.

The mother completed a substance abuse evaluation and then entered a residential treatment program. The mother improved so much in the program that DHS moved to transition the child to her care. The process began on June 11, 2013 with overnight weekend visits, and it ended eleven days later when the mother had a meltdown during one of these visits. The maternal grandmother was called to pick up the child, and the mother left the facility and program with the maternal grandmother and the child. The child was once again placed back in custody of the daycare provider.

During the months that followed, the mother had an opportunity to participate in substance abuse programs. She did not. She also missed several random drug screens and admitted to her DHS worker that she had relapsed.

Due to the mother's continued unresolved addiction and mental health issues, the State filed a petition for termination of her parental rights on September 23, 2013. Shortly thereafter, the mother re-entered the residential treatment facility's program, and the child was returned to the care of the maternal grandmother. Not quite a month later, the termination petition was dismissed. Expressing confidence in the mother's progress, the court granted her six additional months to participate in services that would reunify her and her child. The child remained placed with the maternal grandmother.

Sadly, the mother relapsed and had no contact with the child after the end of January 2014. The State again filed a petition for termination of her parental rights, and a hearing was subsequently scheduled.

A month prior to the hearing, the mother assaulted the maternal grandmother, broke a window at the grandmother's house, and exposed the child to serious trauma. The mother was arrested for child endangerment and placed in jail. She admitted she was using methamphetamine at that time, and she completed a substance abuse evaluation, reporting that she had continued to use drugs and had a mental health diagnosis of borderline personality disorder, anxiety, and depression. The mother ultimately pled guilty to child endangerment arising out of the incident.

A hearing on the petition was held in April 2014, and the mother was in jail at that time, though she did appear personally for the hearing. The mother testified she had just been diagnosed with bipolar disorder, and the additional medication she was given for that diagnosis was making "a huge difference." The mother humbly asked the court for what she realized was not a second, but

a third chance. However, noting the mother's history of instability and increased harm to the child, herself, and the maternal grandmother, the court denied the mother's request. The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1) paragraphs (d), (h), (k), and (*l*) (2013).

The mother now appeals.

## II. Scope and Standards of Review.

We review proceedings to terminate parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them. *Id.* We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

## III. Discussion.

On appeal, the mother contends the State failed to prove the statutory grounds for termination of her parental rights by clear and convincing evidence. "We only need to find grounds to terminate parental rights under one of the sections cited by the [juvenile] court in order to affirm its ruling." *See In re R.R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2000). Termination may be ordered when there is clear and convincing evidence that a child three years of age or younger, who has been adjudicated in need of assistance and removed from the parents' care for six of the last twelve months, cannot be returned to the custody of the child's parents at the time of the termination hearing. *See* Iowa Code

§ 232.116(1)(h) (2013). The record evidences the State satisfied all four elements of section 232.116(1)(h) by clear and convincing evidence.

At the time of the termination hearing, the child could not be returned to the custody of the mother, who was in jail, awaiting an available bed at an inpatient treatment center. The record further shows, despite the mother's more recent progress, the prospects of the mother's ability to parent remain speculative. *See A.B.*, 815 N.W.2d at 778 (noting a parent's past conduct is instructive in determining the parent's future behavior). "We do not gamble with [the] children's future by asking them to continuously wait for a stable biological parent, particularly at such tender age[s]." *D.W.*, 791 N.W.2d at 707. The best interests of the child always remain the paramount consideration. *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). Although we hope the mother is dedicated to seeing treatment through this time, her latest assurance that she is now interested in treatment is simply too little, too late for this child. The juvenile court aptly found: "While parents are entitled to a full measure of patience to benefit from services to safely reunify, there comes a time when ongoing patience translates into harm to the child. That time has come." We agree with the juvenile court that this child "cannot afford to wait for an indefinite period of time for his mother to again stabilize and demonstrate stability that is sustainable." Termination will provide the stability and permanency the child deserves. We therefore agree the State proved termination of the mother's parental rights was proper under Iowa Code section 232.116(1) paragraph (h). Furthermore, we agree with the juvenile court's conclusion that the State established by clear and convincing evidence that termination of parental rights is in the child's best

interest, that there are no compelling reasons to maintain the parent-child relationship, and that there are no exceptions that outweigh termination being in the child's best interest.  Accordingly, we affirm the juvenile court's termination of the mother's parental rights.

**AFFIRMED.**